## BENAVIDES v. DUNN. (No. 6604.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 2, 1921.)

Boundaries ⬅⟶37(3)—Line run by competent surveyor held to fix boundary where no fact established calling for other location.

Where it appeared in a boundary dispute from approved written notes prepared and returned by the officers of the state that the eastern boundary of one parcel of land was the western boundary of the other, and no fact was established that would locate the boundary line of one of them, called for by the other, other than where the line was run by a competent surveyor, it must be *held* that such line was the proper boundary line, without determining whether or not there was an excess in either survey.

Appeal from District Court, Jim Wells County; Hood Boone, Judge.

Suit by John Dunn against Juan Benavides. Judgment for plaintiff, and defendant appeals. Affirmed.

T. C. Mann, of Laredo, for appellant.

Kleberg, Stayton & North, of Corpus Christi, for appellee.

COBBS, J. This suit was brought by appellee to recover from appellant 160 acres of land situated in Duval county, claimed to be out of the west part of survey No. 379. Though the field notes in the petition describe about 7,300 acres, both parties agree in their briefs and admit the suit to be one of a simple boundary line between section 379 and section 461, and that the amount sued for is contained in a disputed strip, a part of survey 379. He also claims title by virtue of the statute of limitations of three, five and ten years.

The defense is a general denial and plea of not guilty. It was tried before the court without a jury, and a judgment was rendered by the court in favor of appellee. Upon request of appellant the court made and filed the following findings and conclusions of law:

"First. I find from the evidence as a fact that plaintiff's pasture fence along the west line of section No. 379 is on the correct boundary line between the said section No. 379 belonging to plaintiff and section No. 461, belonging to defendant, as established in the original surveys of said sections, and that said line where such fence is located is the true and correct boundary line between said sections.

"Second. I further find as a fact that plaintiff has had peaceable and adverse possession of all of the land lying within his pasture, including all of the land in said section No. 379 in controversy in this suit and claimed by defendant, and has been using and enjoying the same and paid all taxes due thereon, claiming the same under a deed duly registered, for a period of more than five years before the institution of the above suit, and that plaintiff therefore has good title to all of said land in controversy under the five-year statute of limitation.

"Conclusions of Law.

"I conclude as a mater of law that plaintiff is entitled to judgment establishing the line of his pasture fence along the west side of said section No. 379, the correct boundary line, and to title and possession of all land inclosed in his pasture fence in said section No. 379, and perpetuating the injunction restraining the defendant from interfering with such possession."

As will be observed, this is largely a fact case, as all boundary suits generally are.

From the first to the fourth assignement, each one attacks the findings of facts, on the ground substantially that the same was not supported by the evidence.

There is no question raised as to the title and ownership of survey No. 379 nor as to 461. It was shown that all taxes were duly paid on survey No. 379 by appellant and those under whom he claims, and either through himself or others holding said property in privy with him have held possession thereof at all times from January, 1907, to the institution of this suit, under muniments of title duly registered, but that the controversy is about the strip which appellant claims to be outside of 379 and within the calls of 461, same made contemporaneously with, and by the same surveyor. Survey No. 379 is called to begin at the southeast corner of survey 69 in the name of Jesus Saenz for corner. It then calls south 950 varas, south with west boundary line of survey No. 377 for Jesus Saenz, to the southwest corner thereof, for southeast corner of this survey; thence west, at 2,377 varas a post marked = and stone mound for southwest corner; thence north 1,900 varas, post and stone for northwest corner, a mesquite marked c, bearing N. 2° 30' W. 64 varas, a coma motte S. 30° 15' E.; thence giving lines, bearings, distances, and other evidence bearing on the line to its beginning.

Survey 461, owned by appellee, is a junior survey because it calls to begin on south boundary line of survey 452, made for Jesus Saenz for the northeast corner, giving bearings; thence south 1,900 varas, with west boundary line of said survey No. 379, to its southwest corner for southeast corner of this survey (461), a post marked = and stone mound on mesa.

For purposes of this discussion, it is not necessary to set out any other of its calls or those of contiguous surveys. It will be seen that the west boundary line of 379 is the east boundary line of 461. Its corners are precisely the same. Wherever the west boundary line of 379 is located, there must also be located and established the east boundary line of survey No. 461, for there

---

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is nothing shown to justify their severance. Obviously, it was never intended by the locator in locating the certificate and the surveyor in making and returning field notes to the general land office to show a purported severance from the public domain of all the lands between the boundaries and lines designated by the field notes.

When appellee purchased the land the services of A. M. French, a competent surveyor, were engaged to run the lines of the survey 379 so as to identify it from the calls in the field notes. He found and identified the northwest corner of 379, at which time there was a post and rock with a mesquite bearing tree marked c, and found other old corners which were identified as established corners; 461 was a short section. The testimony established the corners of 379 and the west line covered by a fence. When appellee purchased the land, Roach was the owner of survey 461, and he would not purchase as stated without having same surveyed which then had a fence along its western boundary. Survey 461 remained in the possession and ownership of Roach and his heirs to 1917, some 29 years, and no question raised as to the true boundary line or the fence thereon.

The field notes of 461 call for its east boundary, the west line of 379 the same corners, and to run south with the west boundary line of survey 379 to its southwest corner for the southeast corner of 461, and calling for and describing the same corner. Therefore to secure a strip of land between that common boundary line means to tear apart and change common boundary lines, by which means only the state adopted to part with her lands, and thus to substitute a different survey neither recognized by it or the owner of the land. It means to disregard that evidence of title expressed in the approved written field notes prepared and returned by the officers of the state and permit the substitution of another and different boundary line. We express no opinion as to whether there is an excess in either survey measuring the amount sued for or a shortage in either survey or to whom it belongs. There is one thing very certain that these surveys have a common boundary line, and, as 461 calls for No. 379 with the same common corners wherever the western boundary line and its corners are located and established, it locates the eastern boundary of 461 without any strip between them. There is no fact established that would locate No. 379 other than at the place where it is found and identified by the surveyor, French. Nor is there anything to show any excess that would fall to 461 in view of the language of the grant, the limitations in the field notes, the facts introduced in evidence, or any other circumstance shown.

We have considered all the assignments of error, and carefully read and considered the statement of facts. They support the findings and conclusion of the court. There is no reversible error assigned, and the judgment is affirmed.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes